[No. 1905. Decided December 14, 1895.]

JAMES FINDLEY, *Respondent*, v. J. S. HULL, *as City Treasurer of Cheney, Appellant.*

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—APPORTIONMENT OF EXPENSE—CHARTER LIMITATIONS.

A grant of authority in a municipal charter to grade streets at the expense of abutting owners is, in the absence of other provisions

relating to the subject, a limitation upon the power of the city authorities and exclusive of other methods.

In such case, the fact that such charter provision is inoperative because of a failure to provide by ordinance for the mode in which the charge on the respective owners shall be determined, will not render the city liable for payment of the cost out of its general fund.

Appeal from Superior Court, Spokane County.—Hon. NORMAN BUCK, Judge.    Reversed.

C. S. Voorhees (Jones, Voorhees & Stephens, of counsel), for appellant.

D. H. Fisk, for respondent.

The opinion of the court was delivered by

GORDON, J.—This appeal is from an order of the the superior court of Spokane county, directing the issuance of a peremptory writ of mandamus requiring the appellant as treasurer of the city of Cheney to make and publish calls for certain warrants issued by said city and to pay the same upon presentation.    The warrants in question were issued to the respondent in payment for certain street grading in accordance with a contract between the respondent and the council of said city.    They were drawn upon the general fund of the city, and the contention of the appellant is that the city authorities had no power to enter into a contract with respondent, providing for the payment of the grading of streets out of the general fund of the city.

The city of Cheney was incorporated under a special act of the territorial legislature approved November 28, 1883.    Sub-division 6 of § 1, ch. 5, of said charter, provides that said city shall have the power and authority "to construct and repair sidewalks and to curb, pave, *grade*, macadamize and gutter any streets, highways or alleys therein *at the cost and expense of the*

*owners of the lots and parcels of land fronting on such street, highway or alley."* It is appellants contention that the expense of grading streets in said city must be borne by the owners of the lots and parcels of land fronting thereon, and that there is no express or implied power conferred by said charter for the payment of the costs and expenses of grading out of the general fund. We think this contention must prevail. The authority to grade any street in the city " at the cost and expense of the owners of the lots and parcels of land fronting on such street" is, in the absence of other provisions relating to the subject, a limitation upon the power of the city authorities, and the method provided by subd. 6 is to the exclusion of all other methods.

*Second National Bank v. City of Lansing,* 25 Mich. 207; *Zottman v. San Francisco,* 20 Cal. 97 (81 Am. Dec. 96); *Johnson v. Common Council of Indianapolis,* 16 Ind. 227.

In the case first above cited it is held:

"Improvements in the city of Lansing for which special assessments are authorized, are not chargeable on the city as ordinary corporation debts; *and there is no liability to pay for them except through assessments paid for that specific purpose."*

An examination of the charter of the city of Cheney discloses that nowhere else therein is any power conferred on the city to grade streets or to pay for such grading in any other manner than that pointed out in subd. 6, above quoted; and in this respect its charter differs from those under consideration in *Soule v. Seattle,* 6 Wash. 315 (33 Pac. 384, 1080), and *Stephens v. Spokane,* 11 Wash. 41 (39 Pac. 266), in which cases this court held that the city was not limited to special assessments as a means of improving its streets in any

way it saw fit.   An examination of the charter of the
city of Seattle, considered by the court in the case of
*Soule v. Seattle, supra,* shows that in addition to the
power conferred upon the city authorities to grade
and improve the streets of said city at the cost of
abutting property, as provided by § 8 of the special
act of the legislature approved February 4, 1886,
(Laws 1885–6, p. 241), § 7 of the same act conferred the
power upon that city to make such improvements and
to assess, levy and collect a road poll tax on the male
inhabitants of the city, and also a " road tax on all
taxable property within the city," in payment there-
for.   And like provisions were contained in the
special act of January 29, 1886, under which the city
of Spokane was incorporated.   Hence neither of these
cases supports the position assumed by respondent in
this case.

But it is urged by counsel for respondent that the
provisions of subd. 6, § 1, ch. 5, *supra,* are inopera-
tive because subd. 8 of the same section provides that
the ordinance of the city shall provide " the mode by
which the charge on the respective *owners* of lots or
land shall be determined for the purposes authorized
by this act;" and that the provisions of said sub-
divisions 6 and 8, cannot be enforced inasmuch as it
is beyond the power of the authorities to create a per-
sonal debt against the owner of the lots or land so
benefited for the expense of the grading and improve-
ment.   Assuming (without deciding) this to be a
correct view, it does not in our opinion furnish a suffi-
cient reason for holding that the authorities of the
city could bind it by a contract beyond the express or
implied powers conferred upon them by law.   It
might be suggested that the city may become incor-
porated under the provisions of the general law for

the organization of cities and towns whenever the voters of such city shall so determine.

We express no opinion upon the question of practice relating to the issuance of the alternative writ in this case, but for the foregoing reasons the judgment will be reversed and the cause remanded for dismissal.

HOYT, C. J., and ANDERS, J., concur.

SCOTT and DUNBAR, JJ., dissent.