**BLANCHAR et al. v. CITY OF CASPER**
No. 1251.

Circuit Court of Appeals, Tenth Circuit.
Jan. 14, 1936.

Carl M. Little, of Portland, Or. (Robert N. Ogden and L. N. Hagood, both of Casper, Wyo., on the brief), for appellants.

Edward E. Murane, of Casper, Wyo., for appellee.

· Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

Plaintiffs below, appellants here, · own street improvement bonds, issued in 1921, of a face value of over $80,000, which are

due and unpaid. The statutes authorized the levy of assessments on land specially benefited and the issuance of bonds to pay for the improvement, such bonds however to "be payable out of the local improvement fund created for the payment of the cost and expense of such improvement, and not otherwise." Sections 2 and 46, c. 120, Wyo.Sess.Laws 1915.[1] Plaintiffs' bonds provide they are "payable only out of the local improvement fund created for the payment of the cost and expense of such improvement, and not otherwise, and in conformity with said act it is hereby recited that:

"Neither the holder nor owner of any bond under the authority of this act shall have any claim therefor against the city by which the same is issued, except from the special assessment made for the improvement for which such bond was issued, but his remedy in case of non-payment shall be confined to the enforcement of such assessments."

The city authorities assessed $36,182.45 against the Chicago & Northwestern Railway Company. Protest was lodged on several grounds, but particularly because the railway property was naked right of way, not benefited and not capable of being benefited by the improvement. The city council denied the protest and the railway company appealed to the state district court in accordance with the statute. Section 21, Id. The bonds were issued pending this appeal. The district court, after a trial on the merits, annulled the assessment for the reason above stated. The city appealed. Pending the appeal, the controversy was settled by the railway company paying $20,000.

This action is at law against the city for the difference between the assessment of $36,182.45 with interest and the $20,000 received in settlement, a total of $30,293.90 with interest from December 1, 1927. The petition was dismissed upon demurrer. The demurrer admits facts well pleaded but not conclusions of the pleader. Rishel v.

Pacific Mutual Life Ins. Co. (C.C.A.10) 78 F.(2d) 881, 886.

The gravamen of the petition is the negligence of the city officials, and reliance is had upon those cases which hold the city liable if the right to assess or reassess property in a benefit district is irretrievably lost through the negligence of the city. Many of those cases are discussed, and the question explored, in Powell v. City of Ada (C.C.A.10) 61 F.(2d) 283, 288.[2] We concluded that discussion with this holding:

"Where the statute confers the power to re-assess, where there is no claim that that power has been lost, a holder of special improvement bonds should first proceed to compel the city officials to do their duty. The appellant's lien extends only to property in the improvement district; he does not have a lien on all the property in the city. The rule contended for by appellant would enable city officials, by mere neglect or a simple refusal to proceed, to convert a special improvement bond into a general obligation of the city, and to compel property owners who have paid for paving abutting their property, to pay also for that abutting the property of others."

That decision disposes of this case. Plaintiffs' bonds specifically provide that a bondholder has no claim against the city, but that his remedy in case of nonpayment is confined to the enforcement of assessments. Section 41 of the cited statute provides that where assessments are invalid, in whole or in part, the city council is empowered to reassess all property specially benefited; it specifically authorizes such reassessment whenever any assessment is "declared void and its enforcement (refused) by any court." That is this case. The assessment against the railway company was declared void and its enforcement refused by a court of competent jurisdiction on May 17, 1927. Section 44 prohibits reassessments or supplemental assessments after ten years from the time the original assessment was held invalid. It

[1] Chapter 120, Sess.Laws 1915, as revised, may be found in Wyo.Rev.Stat. 1931, § 22-1501 et seq.

[2] The diligence of counsel for appellee has brought to our attention the following authorities not cited in the Powell Case: McBean v. City of San Bernardino, 96 Cal. 183, 31 P. 49; Conlin v. Board of Sup'rs of San Francisco, 99 Cal. 17, 33 P. 753, 21 L.R.A. 474, 37 Am.St.Rep. 17; Foster v. City of Alton, 173 Ill. 587, 51 N.E. 76; Conway v. City of Chicago, 237 Ill. 128, 86 N.E. 619; Stephens v. City of Spokane, 14 Wash. 298, 44 P. 541, 45 P. 31; State v. Hastings, 120 Wash. 283, 207 P. 23; Wilson v. City of Aberdeen, 19 Wash. 89, 52 P. 524; Northwestern Lumber Co. v. City of Aberdeen, 20 Wash. 102, 54 P. 935; Hall v. City of Chippewa Falls, 47 Wis. 267, 2 N.W. 279; Roter v. City of Superior, 115 Wis. 243, 91 N.W. 651.

thus appears that when this action was brought a right of reassessment existed, and that nearly three years remained before it would be lost by lapse of time.

Thus by statute, by the words of their bonds, and by controlling authority, plaintiffs' remedy is to proceed by mandamus to compel the city officials to reassess. Plaintiffs allege that on April 27, 1933, they demanded the city reassess and it has failed so to do, and its failure is alleged as a ground of recovery.[3] But, as we held in the Powell Case, the remedy for such failure is mandamus, and not a lawsuit to impose an obligation upon property not benefited by the improvement. Plaintiffs then ask that we prejudge the mandamus action and hold that it could not be maintained if brought. The argument is this: If plaintiffs brought mandamus, other taxpayers might intervene; in such event, the judgment of the district court voiding the railway assessment would not be res judicata; that the court in the mandamus action might reverse its holding in the railway case and hold that the railway assessment was valid; that if the state court did so hold, other property could not be assessed; therefore the mandamus would be denied. We decline to venture any prediction as to what the state court may do with the mandamus action. Nor are we empowered to review the ruling of the state court that the railway assessment was void, even if facts were pleaded justifying any such conclusion. The statute confers the power to reassess when "any court" voids an assessment; a court has done so; the statute does not confine the power of reassessment to instances where courts decided cases correctly. There is nothing in this record to support the conclusion that a court will refuse to compel the exercise of that power, much less that such refusal will be based upon the negligence of the city officials.

The petition alleges the city was negligent in dismissing its appeal from the decision voiding the railway assessment in consideration of $20,000. In support thereof the prophecy is indulged that the Wyoming Supreme Court would have reversed the decision—an allegation which we dis-regard as a bald conclusion of the pleader. In the brief it is stated "the city did not have any statutory authority to make the settlement." There is no suggestion of fraud or collusion. The city defended before the district court and lost. No statute or other authority is cited which imposes upon the city the absolute duty to appeal from that decision. If, after a fair trial, the city and its counsel believed the decision right or unassailable, it would have been a dereliction to appeal. The city did, however, appeal. Pending the appeal, an offer of $20,000—more than half the assessment—was made to compromise a case already lost. If the city and its counsel, after due consideration, concluded it was a settlement which should be accepted, it was their duty to do so. If they had refused, and the decision later had been affirmed, plaintiffs might now be in court attempting to hold the city for its neglect in refusing to settle a case already lost. Whether a case should be settled involves the weighing of intangible probabilities and the nice exercise of opinion and judgment. The power to decide such questions must rest somewhere, for the law does not require a hopeless appeal from every adverse decision, nor demand the pursuit of a footless appeal to its ultimate end. On the contrary, the law favors amicable and fair adjustments of controversies. The power to decide such questions is either with the city officials or it does not exist. If the statute is not explicit, the power to compromise litigation is implied from the power to sue and be sued. O'Connell v. Pacific Gas & Electric Co. (C.C.A.9) 19 F.(2d) 460. This contention comes now with poor grace. These bonds were bought in the face of the litigation by the railway company. The bondholders have accepted the fruits of the settlement, for the $20,000 was paid into this fund. Plaintiffs doubtless received some of this money, for their interest was paid until 1932. Having taken the benefit of the settlement, not having offered then to intervene in aid of the city, the city should not now be charged with negligence for having made it.

The judgment is affirmed.

[3] It is of passing interest to note that plaintiffs, who delayed six years in requesting a reassessment, complain because the city delayed five months in complying.